UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CYNTHIA HATAE NOTO,

     Plaintiff,

v.                               Case No: 5:26-cv-80-JSS-PRL

SECRETARY KRISTI NOEM, USCIS
DIRECTOR JOSEPH B. EDLOW, and
DIRECTOR CONNIE NOLAN

     Defendants.
_____/

## ORDER

Plaintiff moves for an ex parte emergency temporary restraining order (TRO). (Dkt. 4.)  Defendants oppose the motion.  (Dkt. 9.)  Upon consideration, and for the reasons below, the motion is granted.

## BACKGROUND

According to the complaint, Plaintiff, Cynthia Hatae Noto, is a noncitizen who overstayed her visa and has applied for an I-485 adjustment of status with the United States Citizenship and Immigration Services (USCIS) as the relative of a United States Citizen over the age of twenty-one.  (Dkt. 1 at 2, 7.)  Plaintiff reports that she entered the United States on an E-2 treaty investor visa in January 2016 and was admitted until January 2018.  (*Id.* at 7.)  Allegedly, prior to the expiration of her authorized stay, Plaintiff timely filed an application to extend her E-2 nonimmigrant status, which USCIS approved through January 2020.  (*Id.*)  Plaintiff states that she then remained

in the United States after her authorized stay expired, creating an overstay. (*Id.*) However, Plaintiff claims, her adult son is a United States citizen, and as the immediate relative of a United States citizen over the age of twenty-one, Plaintiff is eligible to seek adjustment of status under the Immigration and Nationality Act (INA) even considering her overstay. (*Id.*) Purportedly, in May 2025, Plaintiff filed a Form I-485 application to adjust status concurrently with a Form I-130 petition for alien relative. (*Id.*) All required filing fees, forms, and supporting documentation were allegedly submitted in accordance with USCIS regulations. (*Id.*) Plaintiff claims that upon filing her application, she entered a period of authorized stay pending the resolution of her application by USCIS. (*Id.* at 8.)

Plaintiff reports that she has an interview with USCIS scheduled with respect to this application on February 6, 2026, at 8:00 A.M. at the USCIS Orlando Field Office. (*Id.*; Dkt. 4 at 2.) Purportedly, Plaintiff fears that United States Immigration and Customs Enforcement (ICE) will unlawfully arrest her at the interview based on recent arrests of similarly situated noncitizens at such interviews. (Dkt. 1 at 8.) Accordingly, Plaintiff filed this lawsuit against Kristi Noem (the Secretary of the United States Department of Homeland Security (DHS)), Joseph B. Edlow (the Director of USCIS), and Connie Nolan (the Associate Director of USCIS Service Center Operations Directorate), in their official capacities seeking, among other relief, an order enjoining such an arrest. (*See* Dkts. 1, 4.) After filing her lawsuit on January 30, 2026, Plaintiff filed an emergency ex parte motion for a TRO on February 2, 2026. (*See* Dkts. 1, 4.) Plaintiff states that she attempted to effectuate service of her complaint and notify

Defendants of the motion for a TRO.  (Dkt. 4 at 2–3.)  On February 3, 2026, this court entered an order directing Defendants to respond, which Defendants did on February 4, 2026.  (Dkts. 7, 9.)

**APPLICABLE STANDARDS**

Federal Rule of Civil Procedure 65 permits the court to "issue a [TRO] without written or oral notice to the adverse party or its attorney" if (1) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition, and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why notice should not be required.  Fed. R. Civ. P. 65(b)(1)(A)–(B).  Additionally, to obtain a TRO, a party must demonstrate (1) that the claim underlying the motion has a substantial likelihood of success on the merits, (2) that the movant will suffer irreparable injury if the relief is not granted, (3) that the threatened injury outweighs the harm that the relief would inflict on the nonmovant, and (4) that the entry of the relief would serve the public interest.  *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

If a TRO is issued without notice, the order must (1) state the date and hour it was issued, (2) describe the injury and state why it is irreparable, (3) state why the order was issued without notice, and (4) be promptly filed in the Clerk's Office and entered into the record.  Fed. R. Civ. P. 65(b)(2).  A TRO expires fourteen days after the order is entered, unless the court extends the TRO for a similar period with good cause or the adverse party consents to a longer extension.  *Id.*  Further, the movant

seeking a TRO must give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).

## ANALYSIS

The court considers the likelihood of success by addressing standing, ripeness, and other jurisdictional issues, as well as the merits of Plaintiff's claim that the challenged practice is contrary to the INA and the Administrative Procedure Act (APA).  The court then discusses the likelihood of irreparable harm and considers together the balance of the equities and the public interest.

### A. Likelihood of Success

#### 1. Standing

Defendants dispute whether Plaintiff has standing.  (Dkt. 9 at 3–4.)  At the TRO stage, "the plaintiff must make a clear showing that [she] is likely to establish each element of standing."  *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quotation omitted).  Federal courts have limited jurisdiction over cases and controversies.  U.S. Const. art. III, § 2.  Article III standing requires a plaintiff to demonstrate a "personal stake" in the litigation.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  To demonstrate a personal stake, a plaintiff must show "(1) that she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief."  *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020).  The imminence requirement

is met "if the threatened injury is certainly impending or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

Here, Plaintiff alleges a credible threat of arrest, which constitutes an injury in fact. (*See* Dkt. 4.) Without citation to caselaw, Defendants assert that "Plaintiff has not suffered an injury" because she has not yet been "arrested[ or] detained[] or ha[d] removal proceedings initiated against her." (Dkt. 9 at 4.) However, "it is not necessary that [plaintiffs] first expose [themselves] to actual arrest" to challenge allegedly unlawful government action. *Steffel v. Thompson*, 415 U.S. 452, 459 (1974); *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014) (stating that in the injunction context, "[w]hen an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite" and collecting cases). That is true even where a practice has "not yet been applied and may never be applied." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979); *see Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1258–59, 1268–69 (11th Cir. 2012) (concluding that the plaintiffs were likely to suffer irreparable harm in the absence of an injunction where they faced a credible threat of application). It is not necessary that pre-enforcement plaintiffs prove that they specifically are likely to be arrested; instead, it is sufficient to demonstrate that the fear of arrest "is not imaginary or wholly speculative." *Babbitt*, 442 U.S. at 302.

Plaintiff's fear is supported by multiple sources.[1]  Plaintiff cites recent reporting from news organizations of arrests that occurred at similar adjustment of status interviews.  (Dkt. 1 at 12–15.)  She also includes a declaration from her lawyer—an experienced immigration law practitioner—attesting to the "immediate, serious, and credible" risk of Plaintiff's arrest "based on [his] experience and recent events."  (Dkt. 4-2 at 2.)  Also, in a similar challenge, Defendants declined to disavow the possibility of the allegedly unlawful arrest that Plaintiff seeks to prevent here.  *See Silva v. Noem*, No. 2:25-CV-11867-AB-RAO, 2025 WL 3764074, at *2 (C.D. Cal. Dec. 18, 2025) (detailing that the defendants conceded "that despite being non-removable, [the p]laintiff could nevertheless be arrested . . . at his adjustment of status interview").  "Taken together, this evidence satisfies the imminence requirement."  *See Feitoza v. Noem*, No. 4:26-CV-40011-MRG, 2026 WL 252422, at *3 (D. Mass. Jan. 30, 2026) (concluding the same).

While Defendants do not challenge redressability or causation, the court notes that Plaintiff also satisfies these elements of the standing analysis and thus has standing.  *See id.* (finding that a plaintiff had standing in a nearly identical factual scenario).  A favorable judicial decision would enjoin Defendants from carrying out the threatened arrest. *See Baughcum v. Jackson*, 92 F.4th 1024, 1032–35 (11th Cir. 2024)

---

[1] The court notes that evidentiary standards are relaxed at the TRO stage and courts may rely on otherwise inadmissible evidence to assess the appropriateness of granting emergency relief.  *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) ("At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." (quotation omitted)).

(discussing redressability); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1268, 1271–72 (11th Cir. 2019) (discussing causation).

### 2. Ripeness

Under the APA, a party must obtain a "final agency decision" prior to seeking judicial review of an agency action.  5 U.S.C. § 704.  Two conditions must be met for an agency action to be final.  "First, the action must mark the consummation of the agency's decisionmaking process."  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quotation omitted).  "Second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Id.* at 178 (quotation omitted).

Defendants argue that Plaintiff's claims are not ripe because they "are rooted in her speculation."  (Dkt. 9 at 4–6.)  The court has already addressed that above, and Defendants do not explain how their argument differs in this context.    (*Id.*)[2] Nonetheless, the court notes that "[a]gency action . . . need not be in writing to be final and judicially reviewable."  *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015) (collecting cases); *see Pennzoil Co. v. Fed. Energy Regul. Comm'n*, 645 F.2d 394, 399 (5th Cir. 1981) ("The determination of the finality element is to be done in a pragmatic way."); *see also Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83,

---

[2] Additionally, the one case Defendants cite is distinguishable.  Defendants contend that "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," pointing to *Texas v. United States*, 523 U.S. 296 (1998).  *Id.* at 300.  (Dkt. 9 at 5–6.)  However, in that case the plaintiff could not point to any other instances in which the action at issue had occurred, "was foreseen[,] or even likely."  *Texas*, 523 U.S. at 300.  Here, however, Plaintiff has pointed to several instances of the policy at issue being applied.  (*See* Dkt. 1.)

100 (D.C. Cir. 2020) ("[T]he absence of a written memorialization by the agency does not defeat finality. . . . Agency action generally need not be committed to writing to be final and judicially reviewable."); *Her Majesty the Queen in Right of Ontario v. U.S. E.P.A.*, 912 F.2d 1525, 1531 (D.C. Cir. 1990) (noting that "the absence of a formal statement of the agency's position . . . is not dispositive"); *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 778 F. Supp. 3d 685, 748 (D. Md. 2025) ("To satisfy the consummation element, the challenged agency action need not be formal action or reduced to writing.").

Here, Plaintiff has alleged that Defendants have engaged in a "practice of arresting individuals at USCIS interviews who are attending mandatory interviews for adjustment of status," and that this practice "constitutes final agency action." (Dkt. 1 at 17.) According to the complaint, when asked about arresting I-485 applicants at USCIS offices reporting for adjustment of status interviews, "an ICE spokesperson" stated: "Individuals unlawfully present in the United States, including those out of status at federal sites such as USCIS offices, may face arrest, detention, and removal in accordance with U[nited] S[tates] immigration law." (*Id.* at 15.) This statement may be construed as amounting to a ratification of the allegedly unlawful arrests. *See Washington v. U.S. Dep't of Homeland Sec.*, 614 F. Supp. 3d 863, 873 (W.D. Wash. 2020) ("[B]ecause [DHS] has done nothing to disassociate itself from its agents' ['courthouse arrests'], it must be viewed as at least ratifying the 'courthouse arrests' at issue and the furtive manner in which they have been performed."); *Johnson*, 80 F. Supp. 3d at 184–85 ("Denying review of agency action that is essentially conceded but ostensibly

- 8 -

unwritten would fly in the face of the Supreme Court's instruction that finality be interpreted 'pragmatic[ally].'" (quoting *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239 (1980))). Because Plaintiff demonstrated an agency practice of detaining individuals at interviews like those Plaintiff is set to attend, the court concludes that the alleged practice exists and is ripe for review. (Dkt. 4 at 10.) *See Venetian Casino Resort, L.L.C. v. Equal Emp. Opportunity Comm'n*, 530 F.3d 925, 929 (D.C. Cir. 2008) (explaining that "[a]lthough the details of the" agency's policy were unclear, "the record le[ft] no doubt" that the agency had such a policy).

As to the second prong, Defendants' practice of arresting noncitizens at their mandatory USCIS interviews is one by which "rights or obligations have been determined, or from which legal consequences will flow." *See Bennett*, 520 U.S. at 177–78 (quotation omitted); *see also Ramirez v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 7, 23 (D.D.C. 2018) (finding that an "agency's placement decisions had immediate and significant legal consequences for [the p]laintiffs, who must bear detention in more restrictive settings than [the d]efendants might otherwise deem appropriate based on the [immigration statutes]"); *Nava v. Dep't of Homeland Sec.*, 435 F. Supp. 3d 880, 903 (N.D. Ill. 2020) (explaining that "legal consequences" flow from ICE's decisions to make an arrest).

Accordingly, the alleged arrest at interview practice is reviewable under the APA. *See Feitoza*, 2026 WL 252422, at *4 ("Accordingly, the [c]ourt joins two other

federal courts in concluding that, at the TRO stage, the alleged arrest[ ]at[ ]interview practice is reviewable under the APA."); *Silva*, 2025 WL 3764074, at *2.

### 3. Jurisdiction

Defendants also argue that this court lacks jurisdiction under 8 U.S.C. § 1252(g) "[t]o the extent that Plaintiff seeks a temporary restraining order enjoining USCIS from commencing removal proceedings." (Dkt. 9 at 6.) Section 1252(g) prohibits lawsuits challenging certain decisions or actions taken by the Attorney General:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

§ 1252(g). "When asking if a claim is barred by [section] 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020); *see Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'").

Here, the court notes that no applicable decisions or actions exist, and in fact, the lack of any such decision or action is a critical component of Defendants' arguments as to standing and ripeness. (*See* Dkt. 9.) *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (holding that section 1252(g) precludes judicial review only as to the areas specifically outlined in the subsection); *Huang v. Albarran*, No. 1:25-CV-01308

JLT EPG, 2026 WL 279888, at *3 (E.D. Cal. Feb. 3, 2026) (concluding that the court could exercise jurisdiction where "there [wa]s no removal order at issue"). Nonetheless, the court agrees that Defendants are empowered to commence removal proceedings at their discretion. *See Reno*, 525 U.S. at 477 ("[Section] 306(c)(1) . . . directs that a single provision, [section] 1252(g), shall apply 'without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings.'"); *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 457 (S.D.N.Y. 2018) ("[The r]espondents are empowered to remove [the p]etitioner at their discretion."). At the same time, the court notes that Defendants' "cannot do so in any manner they please" and the proposition "[t]hat courts can review 'how' [the r]espondents exercise their discretion is . . . uncontroversial." *Id.* (collecting cases); *see Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) ("While [section 1252(g)] bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions."); *see also Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (holding that section 1252(g) does not bar "judicial consideration of collateral challenges to the legality" of USCIS's actions; *C.M. v. Noem*, 796 F. Supp. 3d 1198, 1224–25 (S.D. Fla. 2025) (explaining that section 1252(g) does not bar actions that challenge "unlawful[] restrict[ons of] detainees' access to counsel and counsel's access to detainees"); *Banega v. Noem*, No. 2:25-CV-1152-JES-DNF, 2026 WL 234042, at *2 (M.D. Fla. Jan. 29, 2026) (concluding that section 1252(g) did not bar review of a case where the petitioner was detained at an ICE check-in allegedly in violation ).

### 4.  Success on the Merits

Plaintiff alleges that arresting individuals at mandatory USCIS interviews is contrary to the INA and, in turn, must be set aside under the APA.  (Dkt. 4 at 9–12.) At this early stage, Plaintiff has shown a substantial likelihood of success on the merits of this claim.

Under the INA, 8 U.S.C. § 1255, Congress "provides pathways to legal residency" for certain noncitizens.  *Nielsen*, 321 F. Supp. 3d at 464.  "These pathways permit [noncitizens] not lawfully in the United States to 'adjust' their status to legal permanent resident if they meet certain requirements."  *Id.* (citing 8 U.S.C. § 1255(a)). Noncitizens convicted of certain crimes, for example, are ineligible to apply for adjustment of status.   8 U.S.C. § 1182(a)(2).   Noncitizens who work without authorization or who are in unlawful immigration status—those who have overstayed a visa—are likewise ineligible unless they are immediate relatives of United States citizens.  8 U.S.C. § 1255(c), (k).

"[Courts] generally construe a statute so that no clause, sentence, or word is rendered superfluous, void, or insignificant."  *In re Walter Energy, Inc.*, 911 F.3d 1121, 1146 (11th Cir. 2018) (quotation omitted).  Permitting arrests at adjustment of status interviews would render "the statutory opportunity to seek adjustment of status . . . a mere illusion."  *Ceta v. Mukasey*, 535 F.3d 639, 647 (7th Cir. 2008).  "Congress carefully and unambiguously defined by statute the categories of aliens eligible to apply, in the first instance, for adjustment of status."  *Scheerer v. U.S. Att'y Gen.*, 445 F.3d 1311, 1320 (11th Cir. 2006); *see Succar v. Ashcroft*, 394 F.3d 8, 26 (1st Cir. 2005) ("The immigration

laws about adjustment of status are not a haphazard compilation of provisions; they are a calibrated set of rules that govern an area of national importance.").  Congress specifically made noncitizens with family in the United States eligible "to adjust status without having to leave the United States[] to relieve the burden on the United States citizen with whom the [noncitizens] had the requisite family or other relationship." *Succar*, 394 F.3d at 21–22; *see Nielsen*, 321 F. Supp. 3d at 465 ("The INA's adjustment of status scheme is perhaps one of the statute's strongest articulations of Congress's considered public policy in favor of family unity and association.").  Permitting arrests at interviews would "essentially reverse[] the eligibility structure set out by Congress." *Scheerer*, 445 F.3d at 1322 (quotation omitted); *see Succar*, 394 F.3d at 24 ("Congress has spoken clearly on the issue of eligibility for adjustment of status and has reserved for itself the determination of whether a non[]citizen should be able to apply for this relief.").

Here, "[Plaintiff] is . . . the exact type of applicant that Congress intended to benefit when it adopted and, over many years, repeatedly amended, the complicated statutory scheme governing the adjustment of status process."  *Nielsen*, 321 F. Supp. 3d at 464.  Thus, arresting Plaintiff—who meets the statutory eligibility criteria—upon arrival for her mandatory adjustment of status interview would create an absurd result that is at odds with the statute.  *See Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1231 (11th Cir. 2024) ("[C]ourts will interpret statutes to avoid absurdity of results[.]" (quotation omitted)); *see also Neang Chea Taing v. Napolitano*, 567 F.3d 19, 31 (1st Cir.

2009) ("[W]hen drafting the INA, Congress did not intend an absurd . . . result."
(quoting *Lockhart v. Napolitano*, 561 F.3d 611, 620 (6th Cir. 2009)).

At this stage, the court concludes that using the INA's adjustment of status
interviews to lure applicants to USCIS facilities to arrest them is not in accordance
with the law. *See Nielsen*, 321 F. Supp. 3d at 466 ("By inviting [the p]etitioner to
interview for his green card and arresting him at his interview appointment, [the
r]espondents deployed [section] 1255 to effectuate the opposite of its intended
outcome . . . . These type of bait-and-switch tactics are not only a perversion of the
statute, but also likely offensive to 'the concept of ordered liberty.'" (quoting *Rochin v.
California*, 342 U.S. 165, 169 (1952)); *Feitoza*, 2026 WL 252422, at *6 ("Accordingly,
at the TRO stage, the [c]ourt concludes that using INA's adjustment[ ]of[ ]status
procedure as a vehicle to lure applicants to federal facilities to conduct gotcha law
enforcement is not in accordance with the law." (quotation omitted)); *Silva*, 2025 WL
3764074, at *2 ("[A]rresting or detaining [the plaintiff] under 8 U.S.C. § 1226(a) at his
I-485 adjustment of status interview would be contrary to [the INA].") ; *Franco v. Meyer*,
No. 1:25-CV-01620-DAD-CKD, 2025 WL 3280782, at *2 (E.D. Cal. Nov. 25, 2025)
("[A]rresting [the plaintiff] at his adjustment of status interview violates the INA.").

Courts have also found that luring noncitizens to USCIS to arrest them is
unlawful in similar contexts. *See Wanrong Lin v. Nielsen*, 377 F. Supp. 3d 556, 564 (D.
Md. 2019) ("[The d]efendants effectively used the I-130 interview to lure [the plaintiff-
petitioner] to his arrest, preventing him from completing the provisional waiver
process. [The d]efendants have thus taken a rule that was promulgated for one purpose

- 14 -

and used it for the opposite purpose. . . . [T]his is precisely the kind of arbitrary and capricious behavior the APA is designed to prevent."); *Martinez v. Nielsen*, 341 F. Supp. 3d 400, 410 (D.N.J. 2018) ("This case involves exactly the arbitrary and capricious behavior our laws intend to prevent.  DHS created a process for individuals [like the petitioner-plaintiff] to apply for a waiver, and required, as part of that process, his attendance at an interview . . . . Then, based on a purported 'new policy,' ICE agents used that interview to prevent [the petitioner-plaintiff] from completing the waiver process [by arresting him during his interview]." (footnote omitted)); *Sanchez v. McAleenan*, No. CV GLR-19-1728, 2024 WL 1256264, at *7 (D. Md. Mar. 25, 2024) ("[B]y using the provisional waiver process to lure non[]citizen spouses of U[nited] S[tates] citizens to [USCIS] facilities only to then arrest, detain, and eventually remove the applicants, [the d]efendants have acted arbitrarily and nullified their own regulations in violation of [d]ue [p]rocess, the APA, and the INA itself.").

Thus, Plaintiff has shown a likelihood of success on the merits of her APA claim. *See Dep't of Com. v. New York*, 588 U.S. 752, 771 (2019) ("The [APA] . . . instructs reviewing courts to set aside agency action that is . . . not in accordance with law[.]" (quotation omitted)).  Because Plaintiff has shown a likelihood of success on her APA claims, the court declines to address Plaintiff's remaining claims.[3]  *See Schiavo ex rel. Schindler v. Schiavo*, 357 F. Supp. 2d 1378, 1384

---

[3] Even so, the court notes that Plaintiff also appears likely to succeed on her due process claims as well.  *See You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 466 n.8 (S.D.N.Y. 2018) (noting that "[The r]espondents' actions . . . appear to bear on substantive and procedural due process interests in freedom from restraint").  "The Fifth Amendment, as well as the Fourteenth Amendment, protects

(M.D. Fla. 2005) ("To obtain temporary injunctive relief, [a plaintiff] must show a substantial likelihood of success on at least one claim."), *aff'd*, 403 F.3d 1223 (11th Cir. 2005).

## B. Likelihood of Irreparable Harm

"[E]ven if Plaintiff[] establish[es] a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). The asserted irreparable injury "must be neither remote nor speculative, but actual and imminent." *Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quotation omitted); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction. . . . Issuing a preliminary injunction based only

---

every [noncitizen within the United States] from deprivation of life, liberty, or property without due process of law." *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *see Plyler v. Doe*, 457 U.S. 202, 210 (1982) ("Whatever his status under the immigration laws, [a noncitizen] is surely a 'person' in any ordinary sense of that term. [Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."); *Hincapie v. U.S. Att'y Gen.*, 604 F. App'x 882, 884 (11th Cir. 2015) ("The Fifth Amendment right to due process applies to non[]citizens in removal proceedings."); *Rodriguez v. Quinones*, No. 6:26-CV-187-PGB-DCI, 2026 WL 194218, at *2 (M.D. Fla. Jan. 26, 2026) ("Noncitizens present in the United States are entitled to due process under the Fifth Amendment. This includes protection against deprivations of liberty, such as immigration detention, without due process of law." (quotation omitted)). Accordingly, "[l]imitations like the Due Process Clause . . . restrict the Government's power to detain noncitizens," and "[c]ourts must review immigration procedures and ensure that they comport with the Constitution." *J.G. v. Warden, Irwin Cnty. Det. Ctr.*, 501 F. Supp. 3d 1331, 1334 (M.D. Ga. 2020). It is likely that if Defendants were to arrest Plaintiff at her interview, the arrest would likely "violate[ Plaintiff's] right to due process by detaining h[er] without reasonable notice or an opportunity to be heard." *See Blanco v. Bondi*, No. 2:26-CV-00051-SPC-DNF, 2026 WL 214369, at *4 (M.D. Fla. Jan. 28, 2026).

on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). "A possibility of irreparable harm is not enough." *Swisher Int'l, Inc. v. U.S. Food & Drug Admin.*, No. 21-13088, 2022 WL 320889, at *4 (11th Cir. Feb. 3, 2022) (alteration adopted and quotation omitted). Additionally, "[a]n injury is irreparable only if it cannot be undone through monetary remedies." *City of Jacksonville*, 896 F.2d at 1285 (quotation omitted).

Plaintiff alleges that she "faces imminent and irreparable harm." (Dkt. 4 at 19.) Plaintiff "anticipate[s] arrest at her USCIS adjustment interview due to a newly emerging enforcement practice in which [ICE] agents are detaining noncitizens at or shortly after USCIS interviews, including adjustment of status interviews." (*Id.* at 6.) In support of this, Plaintiff cites several recent articles reporting such arrests at USCIS interviews and includes cases with similar facts which suggest that ICE is indeed detaining I-485 applicants who, like Plaintiff, were admitted and lost status but applied for adjustment as an immediate relative of a United States citizen. (*Id.*) Plaintiff also includes a declaration from her counsel that details her risk of arrest. (*See* Dkt. 4-2.)

Courts are split as to whether such a showing is sufficient to establish that Plaintiff is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20; *see Feitoza*, 2026 WL 252422, at *2, *6 (granting in part an ex parte TRO after concluding that the "[p]laintiff's fear of arrest [wa]s neither imaginary nor wholly speculative" (alteration adopted and quotation omitted)); *Howe v. Noem*, No. 26-CV-00135-JO-BJW, 2026 WL 114649, at *1–2 (S.D. Cal. Jan. 15, 2026)

(granting an emergency application for a TRO because the plaintiffs feared that they would be arrested when they appeared for their scheduled USCIS interviews); *Silva*, 2025 WL 3764074, at *2 (granting an emergency ex parte TRO because the plaintiff "face[d] a likelihood of imminent and irreparable harm in the absence of an injunction"); *but see Castro v. Noem*, No. 3:25-CV-03808-CAB-KSC, 2026 WL 25847, at *1 (S.D. Cal. Jan. 5, 2026) (denying a motion for a TRO because the plaintiffs had not shown that they were likely to suffer harm); *Hetzel Silva v. Noem*, No. 25-CV-3515-AGS-BLM, 2025 WL 3638139, at *1 (S.D. Cal. Dec. 15, 2025) (same).

Some courts have found that "the threat of arrest [wa]s well supported and imminent" where it was "supported by multiple sources, including recent arrests of similarly situated I-485 applicants" based on "recent reporting from reputable news organizations of arrests that occurred at adjustment[ ]of[ ]status interviews elsewhere" and "an affidavit from an experienced immigration law practitioner attesting to the immediate, serious, and credible risk of [the p]laintiff's arrest based on his experience and recent events." *Feitoza*, 2026 WL 252422, at *2, *6 (alterations adopted and quotations omitted); *see Howe*, 2026 WL 114649, at *1 (concluding that the plaintiffs showed "that irreparable injury [wa]s likely, not merely possible, in the absence of an injunction" even where there were "instances where detentions ha[d] not occurred" in similar situations because there was "no reason to believe [that the p]laintiffs [would] not be subject to this practice"); *Silva*, 2025 WL 3764074, at *2 (explaining that the plaintiff had "shown a likelihood of irreparable harm sufficient to warrant the issuance of a TRO" because the "[c]omplaint reference[d] several recent news articles, the

- 18 -

experience of his counsel, and case[]law indicating that ICE is indeed detaining I-485 applicants who, like [the p]laintiff, were admitted and lost status but applied for adjustment as immediate relatives of United States citizens"). Other courts, however, have noted that a plaintiff must also cite "actual policies, practices, or individualized communications demonstrating that [the p]laintiffs [we]re likely to be illegally detained at their upcoming interviews," and a "final agency action to form the basis of a claim under the APA." *Castro*, 2026 WL 25847, at *1; *Hetzel Silva*, 2025 WL 3638139, at *1 (observing that the plaintiffs did "not cite to any policies, practices, or communications showing . . . prior threats and enforcement policies," and reasoning that "[w]ithout more concrete facts about the likelihood of their detention," plaintiffs did "not clearly demonstrate[] that [the detention wa]s likely to happen to them" (emphasis and quotation omitted)).

As already noted, "a possibility of irreparable harm" is not enough. *Winter*, 555 U.S. at 21–22; *see Siegel*, 234 F.3d at 1177 (finding no possibility of irreparable harm where the plaintiffs were certified as the winners of the election and the possibility that a recount would change that outcome was wholly speculative). The Eleventh Circuit has concluded that a "district court did not abuse its discretion in denying preliminary injunctive relief [to a company that feared agency enforcement] on the ground that [the plaintiff] was not likely to suffer irreparable harm without an injunction." *Swisher*, 2022 WL 320889, at *4. There, the agency had sent a letter to the plaintiff stating that it had no intention of initiating an enforcement action, the agency attorney reiterated that position, and that position was consistent with the published agency guidance. *Id.*

- 19 -

at *5.   Accordingly, although the Eleventh Circuit "acknowledge[d] that [agency] enforcement remain[ed] a possibility," the Eleventh Circuit concluded that such a possibility was not enough to satisfy the requirement that the injury be likely or actual and imminent.   *Id.*   In contrast, in *Harris Corp. v. Nat'l Iranian Radio & Television*, the Eleventh Circuit held that a "district court did not abuse its discretion in finding a substantial likelihood of irreparable injury."   691 F.2d 1344, 1356–57 (11th Cir. 1982). There, an American manufacturer brough suit against Iranian defendants, seeking to enjoin payment.   *Id.* at 1346.   As the Eleventh Circuit explained, the plaintiff had "sufficiently demonstrated that its ability to pursue a legal remedy . . . ha[d] been precluded," because "effective access to the Iranian courts [was] unlikely" based on Iran's "deep hostility toward the United States and its citizens."   *Id.*   The Eleventh Circuit also concluded that possible resort to another tribunal did not "ameliorate the likelihood of irreparable injury for purposes of this requirement for preliminary relief." *Id.*   Accordingly, for a plaintiff to satisfy the likelihood of irreparable harm requirement, the plaintiff need not demonstrate that the harm is guaranteed, just that the harm is likely.   *See id.*   Further, the likelihood of such harm need not be quantified nor estimated, especially if no evidence demonstrates that the harm is unlikely.   *See id.*; *Swisher*, 2022 WL 320889, at *5

Here, Plaintiff's fear is neither imaginary nor speculative.   *See Younger v. Harris*, 401 U.S. 37, 42 (1971).   It is based on repeated actual instances of immigrants attending USCIS appointments—something that Plaintiff will be doing imminently—

only to be arrested.[4]  *See Siegel*, 234 F.3d at 1176; *Farmworker Ass'n of Fla., Inc. v. Moody*,

734 F. Supp. 3d 1311, 1337–42 (S.D. Fla. 2024) (concluding that the plaintiffs were

---

[4] *See Sardinas v. Noem*, No. 2:26-CV-00067-SPC-NPM, 2026 WL 232405, at *1 (M.D. Fla. Jan. 29, 2026) (stating that the petitioner was arrested when he "attended his yearly check-in appointment at the ICE office in Miramar, Florida"); *BLANCO*, 2026 WL 214369, at *1 (detailing how the petitioner was arrested by ICE agents after exiting a Miami immigration courtroom for a hearing); *Rafael Emilio Arcila Perez v. Kristi Noem et al.*, No. 2:26-CV-00107-SPC-NPM, 2026 WL 206222, at *1 (M.D. Fla. Jan. 27, 2026) ("On January 11, 2026, [the petitioner] appeared at ICE's Miramar office for a check-in required by the order of supervision. ICE arrested [the petitioner] and detained him at Alligator Alcatraz."); *Jerson A.D.G. v. Bondi*, No. 26-516 (DWF/SGE), 2026 WL 207352, at *1 (D. Minn. Jan. 27, 2026) ("When Petitioner arrived at the meeting [with the government regarding his refugee status] on January 21, 2026, he was arrested and detained."); *Serhii L. v. Pamela Bondi, Kristi Noem, et al.*, No. 26-CV-463 (KMM/EMB), 2026 WL 184736, at *1 (D. Minn. Jan. 24, 2026) (stating that the government "left a letter at [the p]etitioner's apartment building asking to meet with him" and "[u]pon presenting himself to immigration authorities for that meeting" the petitioner "was arrested and detained"); *Crispin M. C. v. Noem*, No. 1:25-CV-01487-KES-HBK (HC), 2026 WL 70553, at *2 (E.D. Cal. Jan. 8, 2026) ("ICE arrested petitioner on a warrant at his second interview with USCIS . . . ."); *Mody v. Warden*, No. ED CV 25-3400 FMO (RAO), 2026 WL 51976, at *2 (C.D. Cal. Jan. 5, 2026) ("Petitioner attended an interview in connection with his application to adjust status [and] . . . [a]t the adjustment[ ]of[ ]status interview and in the presence of his counsel, two officers from ICE arrested petitioner." (alterations adopted and quotations omitted)); *Patel v. United States Dep't of Homeland Sec.*, No. 3:25-CV-585, 2025 WL 3765697, at *2 (E.D. Tenn. Dec. 30, 2025) ("On November 28, 2025, Petitioner was detained by ICE while in a local field office for an appointment."); *Gonzalez Carmona v. Ripa*, No. 2:25-CV-1128-SPC-DNF, 2025 WL 3649577, at *1 (M.D. Fla. Dec. 17, 2025) ("When [the petitioner] reported to immigration court for the hearing, DHS dismissed the removal proceedings and arrested him as he left the courtroom."); *Polat v. Soto*, No. 2:25-CV-16893, 2025 WL 3718769, at *1 (D.N.J. Dec. 17, 2025) ("October 20, 2025, Petitioner appeared for a Credible Fear Interview at the USCIS Asylum Office . . . [and] was found to possess a credible fear of persecution from Turkey, but was nevertheless taken into DHS custody immediately following the interview . . . ."); *Arango v. Genalo*, No. 25-CV-6720 (RER), 2025 WL 3637500, at *1 (E.D.N.Y. Dec. 16, 2025) (explaining that the petitioner "appeared for an asylum interview appointment at the USCIS asylum office" and "[a]fter being at the asylum office for several hours, DHS arrested and detained" the petitioner); *United States v. Torres-Carmona*, No. 3:25-CR-132-RGJ, 2025 WL 3554625, at *1 (W.D. Ky. Dec. 11, 2025) (stating that "USCIS mailed a letter to [the plaintiff] requesting him to come to the USCIS building . . . to complete his immigration interview" but" following his immigration interview, [the plaintiff] was escorted into a secure hallway where three [d]eportation [o]fficers . . . awaited to arrest him" (alterations adopted and quotation omitted)); *Diaz v. Albarran*, No. 3:25-CV-09837-JSC, 2025 WL 3496686, at *1 (N.D. Cal. Dec. 5, 2025) ("At the end of the interview, . . . [the p]etitioner was handcuffed and taken into custody."); *Metreveli v. Flanagan*, No. 25-CV-8039 (MKV), 2025 WL 3496754, at *2 (S.D.N.Y. Dec. 5, 2025) (stating that a petitioner's "I-485 application was never adjudicated on the day of his appointment with USCIS" and instead "USCIS called [ICE] and arranged for [the p]etitioner to be arrested during the interview for his I-485 application" (quotation omitted)); *Perez v. Mordant*, No. 2:25-CV-00947-SPC-DNF, 2025 WL 3466956, at *1 (M.D. Fla. Dec. 3, 2025) (detailing how the petitioner "attended a hearing to adjudicate his I-589" where he was arrested by ICE agents and sent to Alligator Alcatraz); *Franco v. Meyer*, No. 1:25-CV-01620-DAD-CKD, 2025 WL 3280782 (E.D. Cal. Nov. 25, 2025) (noting that the "petitioner appeared for his

likely to suffer irreparable harm without an injunction because they would be placed at "immediate risk of arrest"), *supplemented*, No. 23-CV-22655, 2024 WL 5459522 (S.D. Fla. May 23, 2024), *and modified sub nom. Farmworker Ass'n of Fla., Inc. v. Uthmeier*, 792 F. Supp. 3d 1306 (S.D. Fla. 2025); *Ajugwe v. Noem*, No. 8:25-CV-982-MSS-AEP, 2025 WL 1148689, at *3 (M.D. Fla. Apr. 18, 2025) (granting a TRO in respect to ICE's termination of the plaintiff's Student and Exchange Visitor Information System (SEVIS) record because the plaintiff "face[d] the risk of immediate detention or removal from the United States" even when there was no evidence that the plaintiff's F-1 visa was terminated); *Daou v. Noem*, No. 8:25-CV-976-MSS-AEP, 2025 WL 1148687, at *3 (M.D. Fla. Apr. 18, 2025) (recognizing "the risk of immediate detention or removal from the United States" and granting a TRO after the plaintiff's F-1 record in SEVIS was terminated despite no evidence that the plaintiff would be deported and no allegations that the plaintiff's F-1 visa was revoked).

Courts that have denied TROs in this context have noted that the plaintiff must show that they specifically are likely to be illegally detained at their upcoming interviews. *Castro*, 2026 WL 25847, at *1; *Hetzel Silva*, 2025 WL 3638139, at *1 ("Without more concrete facts about the likelihood of their detention," plaintiffs did "not clearly demonstrate[] that [it wa]s likely to happen to them."). No such

---

scheduled adjustment of status interview at USCIS" and "[a]t the conclusion of the interview, ICE agents arrested [the] petitioner"); *Diaz v. Albarran*, No. 3:25-CV-09837-JSC, 2025 WL 3214972 (N.D. Cal. Nov. 18, 2025) (explaining that the "[p]etitioner appeared for his scheduled . . . interview" with USCIS and, "[a]t the end of the interview, . . . [the p]etitioner was handcuffed and taken into custody"); *Lomeu v. Soto*, No. 25CV16589 (EP), 2025 WL 2981296, at *2 (D.N.J. Oct. 23, 2025) ("When [the petitioner] reported to be fingerprinted for her I-765 Application for Employment Authorization on October 2, 2025, ICE arrested her and detained her . . . .") .

requirement exists.  *See Harris Corp.*, 691 F.2d at 1357 (holding that general Iranian animosity towards the United States and its citizens was sufficient to find a likelihood that that an American manufacturer would not receive effective access to Iranian courts).  Further, as already explained, "it is not necessary that [a plaintiff] first expose [themselves] to actual arrest" to challenge allegedly unlawful government action. *Steffel*, 415 U.S. at 459; *see Driehaus*, 573 U.S. at 158–59 ("When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite.").  That is true even where a practice has "not yet been applied and may never be applied." *Babbitt*, 442 U.S. at 302.  It is not necessary that pre-enforcement plaintiffs prove that they specifically are likely to be arrested; instead, it is sufficient to demonstrate that the fear of arrest "is not imaginary or wholly speculative." *Babbitt*, 442 U.S. at 302.

As to the other concern raised by those courts that have denied similar TROs, which this court discussed above in connection with ripeness, "[a]gency action . . . need not be in writing to be final and judicially reviewable." *Johnson*, 80 F. Supp. 3d at 184 (D.D.C. 2015).  Requiring a plaintiff to identify official policies or individualized communications "would allow an agency to shield its decisions from judicial review simply by refusing to put those decisions in writing."[5] *Grand Canyon*

---

[5] Similarly, requiring plaintiffs to provide facts demonstrating that they are specifically likely to be detained would allow USCIS to shield its actions from review by keeping the method of selection random and thus unlikely to anticipate.  *See Grand Canyon Tr. v. Pub. Serv. Co. of New Mexico*, 283 F. Supp. 2d 1249, 1252 (D.N.M. 2003); *see also Howe v. Noem*, No. 26-CV-00135-JO-BJW, 2026 WL 114649, at *1 (S.D. Cal. Jan. 15, 2026) (noting that the defendants disavowed a specific policy of detaining individuals in the plaintiffs' circumstances and pointed to instances in which detentions did

*Tr. v. Pub. Serv. Co. of New Mexico*, 283 F. Supp. 2d 1249, 1252 (D.N.M. 2003) (finding that an unwritten agency policy is reviewable); *accord Am. Assn. of U. Professors v. Rubio*, 780 F. Supp. 3d 350, 385 (D. Mass. 2025); *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 139 (D.D.C. 2018). While Plaintiff does not identify any written policy of USCIS nor explain how USCIS determines who is and is not likely to be impacted (and thus the likelihood that Plaintiff will be specifically detained), Plaintiff does demonstrate an agency practice of detaining individuals at interviews like those Plaintiff is set to attend. (Dkt. 4 at 10.) *See Venetian Casino Resort*, 530 F.3d at 929 (explaining that "[a]lthough the details of the" agency's policy were unclear, "the record le[ft] no doubt" that the agency had such a policy).

"Without interim relief to maintain the status quo, [Plaintiff] could be deported or removed from this [c]ourt's jurisdiction, effectively foreclosing any recourse." *Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 2732717, at *2 (M.D. Fla. Sept. 25, 2025); *see Fuenmayor Torres v. Quinones*, No. 6:26-CV-258-JSS-LHP, 2026 WL 262596, at *4 (M.D. Fla. Feb. 2, 2026) (collecting cases); *Trujillo Claros v. Quinones*, No. 6:26-CV-208-JSS-LHP, 2026 WL 251807, at *4 (M.D. Fla. Jan. 30, 2026). Further, unlawful arrest and "unnecessary deprivation of liberty clearly constitutes irreparable harm." *United States v. Bogle*, 855 F.2d 707, 710–11 (11th Cir. 1988); *see Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm."); *Perez*, 2026 WL 206222, at *2 ("[U]nlawful

---

not occur but that they expressly declined to confirm that the plaintiffs would not be detained at the upcoming interviews or explain why the plaintiffs were unlikely to be subjected to the same treatment).

detention also constitutes irreparable injury."); *Ercelik v. Hyde*, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *14 (D. Mass. May 8, 2025) (recognizing that the fear of being subject to unlawful arrest may constitute irreparable harm); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (describing "the interest in being free from physical detention" as "the most elemental of liberty interests"). Accordingly, the court finds that Plaintiff has shown a likelihood of imminent and irreparable harm.

## C. Balance of Equities and the Public Interest

"Finally, Plaintiff[] must show that [her] threatened injury outweighs any harm the [TRO] may cause Defendant[s], and that the [TRO] is in the public interest." *Scott v. City of Daytona Beach Fla.*, 740 F. Supp. 3d 1205, 1218 (M.D. Fla. 2024). "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[N]either equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (affirming that the balance of hardships weighed in favor of plaintiffs alleging that the government violated the INA); *see Missouri v. Trump*, 128 F.4th 979, 997 (8th Cir. 2025); ("There is generally no public interest in the perpetuation of unlawful agency action." (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016))); *Texas v. United States*, 40 F.4th 205, 229 (5th Cir. 2022) (same); *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) ("[F]rustration of federal statutes . . . are not in the public interest . . . ."); *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994) (recognizing the "public interest in having governmental agencies

abide by the federal laws that govern their existence and operations"); *Ajugwe*, 2025 WL 1148689, at *3 ("Neither the Government nor the public has an interest in the violation of law and regulations."); *see also Daou*, 2025 WL 1148687, at *3.  Further, "there is a public interest in preventing aliens from being wrongfully removed." *Nken*, 556 U.S. at 436; *see Tesfamichael v. Gonzales*, 411 F.3d 169, 178 (5th Cir. 2005) (recognizing the "public interest in having . . . immigration laws applied correctly and evenhandedly"); *Perez*, 2026 WL 206222, at *3 ("[T]here is no apparent legitimate public interests served by [the petitioner's] unlawful detention. In fact, the public is better served by the faithful execution of immigration laws.").  Even if the Government's interests in arresting Plaintiff were strong, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021).

Thus, while "Plaintiff[] will suffer irreparable injury in the absence of a" TRO, "the [c]ourt does not find that USCIS will be harmed upon issuance of a restraining order preventing it from" arresting Plaintiff at her scheduled interview. *See Machado v. Mayorkas*, No. 6:24-CV-1262-PGB-EJK, 2024 WL 4188392, at *4 (M.D. Fla. Sept. 13, 2024).  Further, such a TRO "would not disserve the public interest" as it would "ensure fairness in the application of U.S. immigration laws," especially where "Plaintiff[] ha[s] demonstrated [her] efforts to best comply with USCIS' process." *See id.* (quotation omitted).  "Because Plaintiff has demonstrated a substantial likelihood of success that the challenged arrest[ at[ ]interview practice violates the INA and

APA, the balance of equities and public interest both tip in [her] favor." *See Feitoza*, 2026 WL 252422, at *6; *see also State v. Becerra*, 544 F. Supp. 3d 1241, 1304 (M.D. Fla. 2021) (concluding that the likelihood of success on the merits showed that injunctive relief preventing the likely unlawful agency action was in the public interest); *Silva*, 2025 WL 3764074, at *3 ("[B]ecause [the p]laintiff has demonstrated a likelihood of success on his claim that [the d]efendants would violate the INA and the APA if they arrested him at his adjustment of status interview, and because he has shown that he is sufficiently likely to suffer serious harm, the balance of equities and public interest both tip sharply in his favor." (alterations adopted and quotation omitted)).

## CONCLUSION

Accordingly:

1. Plaintiff's motion for a temporary restraining order (Dkt. 4) is **GRANTED IN PART** as follows:

    a. The court hereby **ENJOINS** Defendants from arresting and detaining Plaintiff in connection with her adjustment of status interview, which is currently set for February 6, 2026.

    b. The court **DENIES** the application insofar as it seeks other relief.

    c. This temporary restraining order will expire **February 19, 2026**, in accordance with Federal Rule of Civil Procedure 65(b)(2) unless, for good cause shown, this order is extended or Defendants consent that it should be extended for a longer period of time. However, the court may,

upon demonstration of good cause by any party-of-interest, shorten or lift this order.

2. The court **DIRECTS** Defendants to show cause, in writing, why a preliminary injunction should not issue. Defendants' response is due February 9, 2026.  The court **SETS** a hearing on the order to show cause regarding preliminary injunction for February 12, 2026, at 11:00 A.M.

**ORDERED** in Orlando, Florida, 5:15 P.M. on February 5, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record